108 F.3d 1392
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
GRAIN PROCESSING CORPORATION, Plaintiff-Appellant,
v.
AMERICAN MAIZE-PRODUCTS COMPANY, Defendant-Cross/Appellant.
 Nos. 95-1506, 95-1507.
 United States Court of Appeals, Federal Circuit.
 Feb. 20, 1997.
 
 Before ARCHER, Chief Judge, NIES,* Senior Circuit Judge, and BRYSON, Circuit Judge.
 DECISION
 ARCHER, Chief Judge.
 
 
 1
 Grain Processing Corporation (GPC) appeals the judgment of the United States District Court for the Northern District of Indiana, Grain Processing Corp. v. American Maize-Products Co., 893 F.Supp. 1386, 37 USPQ2d 1299 (N.D.Ind.1995), awarding GPC damages for American Maize-Products Company's (AMP) infringement of its U.S. Patent No. 3,849,194 (the '194 patent) based on a reasonable royalty. GPC requests that we remand to the district court with direction that damages be calculated based on lost profits. AMP, on cross-appeal, challenges the validity of the '194 patent. We vacate the award of damages and remand for reconsideration of whether lost profits should be awarded, and affirm the judgment that the patent is not invalid.
 
 BACKGROUND
 
 2
 This patent infringement action involves a product known as low-dextrose malto-dextrins used as carriers in the manufacture of foods for such things as sweeteners or bulking agents. On May 12, 1981, GPC filed suit against AMP charging, for purposes of this appeal, that AMP's product known as Lo-Dex 10 (known at one time as Fro-Dex 10) infringed the '194 patent. After a number of decisions by the district court and two appeals to this court, the district court awarded GPC compensation for AMP's infringement based on a reasonable royalty of 3% for all production from May 1981 until May 1991. The court denied GPC's request for lost profits because AMP developed a new process of producing Lo-Dex 10 in 1991 that did not infringe the '194 patent. Although this process was neither developed nor available during the period of infringement, the court concluded that AMP could have developed it sooner and that it would have been a noninfringing substitute.
 
 
 3
 The district court declined to revisit the issue of validity based on the law of the case. In a prior appeal, this court affirmed the district court's judgment that the patent was not invalid.
 
 DISCUSSION
 
 4
 * We review the award of damages to determine whether it was based on an erroneous conclusion of law, clearly erroneous factual findings, or a clear error of judgment amounting to an abuse of discretion. Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1543, 35 USPQ2d 1065, 1067 (Fed.Cir.1995).
 
 
 5
 GPC challenges the district court's damages award primarily on the ground that it was legal error to deny lost profits on the basis of a noninfringing substitute that did not exist during, and was not developed until after, the period of infringement. GPC argues that the issue is not whether AMP could have developed a noninfringing substitute but whether there was actually a noninfringing substitute on the market.
 
 
 6
 Rather than defend the district court's reliance on a noninfringing substitute that did not exist, AMP argues that not all of the product produced by its various processes was found to be infringing; thus, it produced a noninfringing substitute.
 
 
 7
 We agree with GPC that the court erred in refusing to award lost profits based on a noninfringing substitute that was not available at the time of infringement. The issue of noninfringing substitutes in a lost profits analysis comes from the test established in Panduit Corp. v. Stahlin Brothers Fibre Works, Inc., 575 F.2d 1152, 197 USPQ 726 (6th Cir.1978). In that case, the court required the patent holder, in order to obtain damages in the form of lost profits, to establish (1) demand for the patented product, (2) the absence of acceptable noninfringing substitutes, (3) manufacturing and marketing capability to exploit the demand, and (4) the amount of profit it would have made. Panduit, 575 F.2d at 1156, 197 USPQ at 730.
 
 
 8
 The court in Panduit established the proper time for considering the availability of noninfringing substitutes as the period of infringement. See Id., 515 F.2d at 1160-62, 197 USPQ at 732-35. On this issue, the Panduit court went further and said that switching to a noninfringing product years after the period of infringement did not establish the presence of a noninfringing substitute during the period of infringement. Id. at 1162, 197 USPQ at 735.
 
 
 9
 Likewise, in State Industries, Inc. v. Mor-Flo Industries, Inc., 883 F.2d 1573, 1579, 12 USPQ2d 1026, 1030, (Fed.Cir.1989), this court rejected an attempt to rely on a noninfringing substitute that was not available during the period of infringement. Thus, the law is clear--to be an acceptable noninfringing substitute, the product or process must have been available or on the market at the time of infringement. The district court's holding to the contrary is erroneous.
 
 
 10
 AMP's argument that, because not all of the output from its processes was found to be infringing, it actually produced a noninfringing substitute is unpersuasive. The district court found that any attempt to eliminate the infringing portion of AMP's output would have rendered the venture unprofitable. Thus, the noninfringing output is not properly a substitute.
 
 
 11
 Notwithstanding the court's error on the question of noninfringing substitutes, AMP argues that because the court found that GPC had failed to show another of the Panduit factors, the denial of lost profits is supportable on that ground. Specifically, it argues that the court's finding that "no one argue[d] that any customer cared a whit about the product's descriptive ratio"[1] shows that GPC failed to prove demand for the patented product.
 
 
 12
 GPC counters that another finding by the district court supports an award of lost profits under Rite-Hite. According to GPC, the court's finding that AMP's "destroying roughly 50% of the Process II product and 82.5% of the Process III product would have made the venture unprofitable, and GPC would have got most of the business" amounts to a determination that "but for" AMP's infringement, GPC would have made the sales. See Rite-Hite, 56 F.3d at 1545, 35 USPQ2d at 1069 (stating that the "patentee need only show that there was a reasonable probability that the sales would have been made 'but for' the infringement").
 
 
 13
 We agree that these findings arguably support different conclusions on the question of lost profits. We cannot, however, weigh these findings and state, as a matter of law, whether GPC is entitled to lost profits. The district court should properly consider and weigh these, as well as other, pertinent findings.
 
 
 14
 Finally, on the question of damages, GPC's challenge to the district court's hypothetical negotiation analysis is unpersuasive. In determining what constitutes a reasonable royalty, the court has discretion to make certain subsidiary decisions, such as what method to use to calculate a reasonable royalty, and those decisions are reviewed for an abuse of discretion. Hughes Aircraft Co. v. United States, 86 F.3d 1566, 1572, 39 USPQ2d 1065, 1069 (Fed.Cir.1996). The court hypothesized a negotiation taking place in 1974, the earliest date on which GPC could charge AMP with infringement. We discern no abuse of discretion.
 
 
 15
 Because the district court based its denial of lost profits solely on the basis of its erroneous conclusion concerning noninfringing substitutes, we vacate the damage award and remand to the district court to determine whether, in accordance with our decision in Rite-Hite and this opinion, GPC is entitled to lost profits.
 
 II
 
 16
 On cross-appeal, AMP seeks to challenge the validity of the '194 patent. This attack comes after a prior appeal to this court upholding the validity of the '194 patent, Grain Processing Corp. v. American Maize-Products Co., 840 F.2d 902, 5 USPQ2d 1788 (Fed.Cir.1988). Under the principles of law of the case, courts adhere to a decision in a prior appeal absent exceptional circumstances, such as a change in the controlling law, clear error in the earlier decision resulting in manifest injustice, or substantially different evidence at a subsequent trial. Mendenhall v. Barber-Greene Co., 26 F.3d 1573, 1582, 31 USPQ2d 1001, 1007 (Fed.Cir.1994). We find no such exceptional circumstances present in this case.
 
 
 17
 AMP argues that this court's second decision redefined the scope of the claims and necessarily reopened the question of the validity. It contends that the patent is invalid under 35 U.S.C. § 112 because the specification does not identify what scientific test should be used to determine infringement.
 
 
 18
 In the first appeal, while reviewing the question of AMP's infringement, the court considered the claim limitation that the product have "a descriptive ratio greater than about 2." Grain Processing, 840 F.2d at 910, 5 USPQ2d at 1795. The court noted that there is more than one scientifically acceptable method for calculating the descriptive ratio and that under any of the methods AMP's process produced some product that infringed the '194 patent. Id. at 910-11, 5 USPQ2d at 1795. The court, therefore, affirmed the district court's finding that this claim limitation was satisfied. Id. at 911, 5 USPQ2d at 1795.
 
 
 19
 In the second appeal, Grain Processing Corp. v. American Maize-Products Co., No. 90-1524 (Fed.Cir. Apr. 19, 1991), the court considered whether AMP's newly developed process produced a product that violated an interim injunction against further infringement. The court again considered the claim limitation "a descriptive ratio greater than about 2." This time GPC offered, as proof of infringement, the results of testing AMP's product according to an assay technique known as the Schoorl method. Under the Schoorl method, AMP's product had a descriptive ratio greater than two. AMP countered with the results from tests using the Lane-Eynon assay method. Under that method, AMP's product did not have a descriptive ratio greater than two. The court concluded that GPC properly proved infringement under the Schoorl test because the Schoorl test was reliable, had been approved by an industry standard-setting body, and was identified in the prosecution history as the test used by the inventor.
 
 
 20
 AMP argues that these decisions are inconsistent. We disagree. This court's first decision in this case, properly construed, allowed the patentee to rely on any scientifically acceptable test, including the Schoorl test, to prove infringement. In the second appeal, the court held that AMP had infringed under the Schoorl procedure. The court in the first appeal did not require GPC to prove infringement under every possible test, nor did it state that infringement could be disproved by any possible test. Indeed, as infringement was shown under any of the tests, the court in the first appeal did not reach the question of whether it was sufficient to prove infringement under one acceptable test.
 
 
 21
 There is no suggestion that the term "descriptive ratio" is unclear or is not properly enabled, nor is there any suggestion that it was not known that the Schoorl method was an acceptable method to determine the descriptive ratio. Accordingly, the previous judgment of this court that the '194 patent was not proven invalid must stand.
 
 
 
 *
 Senior Circuit Judge Nies died on August 7, 1996. This case was decided by the remaining judges in accordance with Fed. Cir. Rule 47.11
 
 
 [1]
 The limitation of claim 12 at issue specifies a hydrolysate having "a descriptive ratio greater than about 2, said descriptive ratio being the quotient obtained by dividing the sum of the percentage of saccarides, dry basis having a degree of polymerization of 1 to 6, by the dextrose equivalent value."